IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CAITLIN R. WORKMAN,**
**Claimant Below, Petitioner**

**FILED**
**September 5, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-14**          (JCN: 2022009605)

**ACNR RESOURCES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Caitlin R. Workman appeals the December 14, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent ACNR Resources, Inc. ("ACNR") filed a timely response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's orders, which closed the claim for temporary total disability ("TTD") benefits and denied authorization for an orthopedic consultation, an EMG of the right upper extremity, additional physical therapy, and an MR arthrogram.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's Order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 8, 2021, Ms. Workman presented to the emergency room after sustaining a work-related injury. Specifically, a chain under tension broke, causing the end of the chain and attached hook to strike Ms. Workman's right shoulder. X-rays revealed no fracture and Ms. Workman was diagnosed with right shoulder contusion and right back laceration. The following day, Ms. Workman followed up with Physician's Assistant Elizabeth Snyder with complaints of pain and soreness. Ms. Snyder noted no signs of infection of the laceration and found good range of motion in the neck and right shoulder with some tenderness to palpation and increased pain with movement against resistance. Ms. Snyder diagnosed Ms. Workman with laceration and contusion of the right shoulder. She instructed Ms. Workman to remain off work and to return in six days for a follow-up at which time Ms. Snyder anticipated releasing Ms. Workman to work with no restrictions.

---

[1] Petitioner is represented by J. Thomas Greene Jr., Esq., and T. Colin Greene, Esq. Respondent is represented by Aimee M. Stern, Esq.

Ms. Workman returned to Ms. Snyder for a follow-up on November 15, 2021, with complaints of increased pain in the biceps and decreased grip strength in her right hand. Upon examination, Ms. Snyder noted normal range of motion with mild weakness, decreased grip strength, and shaking in the right hand. Ms. Snyder referred Ms. Workman for physical therapy and continued her off work. By order dated November 19, 2021, the claim administrator held the claim compensable for laceration without foreign body of the back wall of the thorax and contusion of the right shoulder.

Also on November 19, 2021, Ms. Workman returned to see Ms. Snyder with complaints of continued weakness in her right hand and pain in her biceps. Ms. Snyder noted good range of motion with mild tenderness, decreased grip strength, and shaking in the right hand. Ms. Snyder ordered a cervical spine x-ray, which was negative. Ms. Snyder noted some improvement with physical therapy and continued Ms. Workman off work and requested a referral for an orthopedic consultation due to the continued weakness.

Ms. Workman had another follow-up with Ms. Snyder on December 1, 2021. Ms. Workman reported that her symptoms were improving with physical therapy but that as the day progresses, her right upper extremity weakens, and her hand would shake or tremble. Ms. Snyder noted that Ms. Workman had good range of motion with no pain in her neck, no noticeable weakness with grip strength, and no observable shaking or trembling in the right hand. However, Ms. Workman did have some weakness with lifting against resistance. Ms. Snyder reiterated her plan to request a consultation with an orthopedist and also stated that she would request an EMG based on the continued complaints of pain and weakness.

On December 15, 2021, Prasadarao Mukkamala, M.D., performed an IME of Ms. Workman. Dr. Mukkamala noted normal range of motion, motor examination, and sensory examination. Dr. Mukkamala found Ms. Workman's grip strength to be sixty pounds in her right hand and eighty pounds in her left hand. Dr. Mukkamala opined that Ms. Workman had reached maximum medical improvement ("MMI") for the compensable conditions and that there was no indication for any additional diagnostic studies or treatment. Dr. Mukkamala stated that there was no evidence that the chain and hook penetrated the scapula or thoracic cavity, though it may have penetrated the infraspinatus. Lastly, Dr. Mukkamala found no permanent impairment resulting from the compensable injury and opined that Ms. Workman could return to work with no restrictions.

By two separate orders dated December 16, 2021, the claim administrator suspended Ms. Workman's TTD benefits and denied authorization for an orthopedic consultation and an EMG. Ms. Workman returned to see Ms. Snyder on December 22, 2021. Ms. Workman reported that her symptoms continued to improve but that she was concerned about going back to work due to some pain with long periods of activity. Ms. Snyder noted that Ms. Workman's grip strength was better and that the shaking had improved. Ms. Workman requested additional physical therapy and stated that she thought that if she returned to

2

work that she would have intolerable pain and increasing weakness. Ms. Snyder noted that she would request additional physical therapy and instructed Ms. Workman to return in a few weeks, at which time Ms. Snyder anticipated being able to release Ms. Workman to work. Ms. Snyder also indicated that she would resubmit the request for an orthopedic consultation.

The claim administrator denied the request for an orthopedic consultation by order dated January 3, 2022. Ms. Workman followed up with Ms. Snyder on January 5, 2022, and reported that she continued to have some tenderness in her shoulder and a little pain with lifting her arm over her head. However, her range of motion and strength was improving, with the strength in her right hand being only slightly less than her left hand, and her arm no longer trembled. Ms. Snyder consulted with Ms. Workman's physical therapist, and they agreed that Ms. Workman would benefit from two more weeks of physical therapy before returning to work. Clinical notes from another visit on January 19, 2022, indicated largely the same complaints and findings. Ms. Snyder instructed Ms. Workman to return the following week and opined that she could "hopefully" release Ms. Workman to return to work on January 31, 2022.

The claim administrator closed the claim for TTD benefits on January 20, 2022. Subsequently, Ms. Workman was referred to an orthopedist through her personal insurance. Ms. Snyder evaluated Ms. Workman again on January 28, 2022, and noted that Ms. Workman continued to improve with physical therapy but reported some tenderness to palpation, some weakness on the right compared to the left, and a mild tremor in her right hand. Ms. Snyder instructed Ms. Workman to return in a couple of weeks and opined that she should be able to release Ms. Workman to work with no restrictions. At a February 11, 2022, follow-up with Ms. Snyder, Ms. Workman continued to have tenderness to palpitation and a mild tremor. Ms. Snyder noted that she would request an additional nine physical therapy sessions. The claim administrator denied the request for additional physical therapy sessions on February 14, 2022.

Ms. Workman was evaluated by Jeffrey Abbott, D.O., an orthopedic surgeon, on March 3, 2022. Upon examination, Dr. Abbott felt that Ms. Workman may have a labral tear and ordered an MR arthrogram to confirm the diagnosis, authorization of which was denied by the claim administrator. Ms. Workman underwent the MR arthrogram through her private insurance on March 22, 2022, and the results were largely unremarkable, though it did reveal "indistinctness of the middle glenohumeral ligament which should be correlated with signs of joint instability clinically."

On April 6, 2022, Ms. Workman was examined by Ross Tennant, NP. Mr. Tennant noted adequate or normal range of motion in Ms. Workman's cervical spine and shoulders but observed a noticeable tremor in Ms. Workman's right upper extremity and weaker grip strength in the right hand as compared to the left. He diagnosed Ms. Workman with a

shoulder contusion. In May of 2022, Ms. Workman testified via deposition regarding her work-related incident.

By order dated December 14, 2022, the Board affirmed the claim administrator's four orders denying authorization for the EMG, MR arthrogram, additional physical therapy, and two requests for an orthopedic consultation. Specifically, the Board found that:

> The evidence indicates that [Ms. Workman's] current complaints consist of weakness of the right arm that gets progressively worse with activity, weak grip strength, and tremors of the RUE. The evidence does not indicate that the complaints are the result of a laceration and a contusion. It is determined that the orthopedic consult, EMG, physical therapy, and MR arthrogram are not causally related to the current compensable conditions.

The Board also affirmed a fifth order closing the claim for TTD benefits. The Board noted that, at the time the claim was closed for TTD benefits, Dr. Mukkamala had opined that Ms. Workman had reached MMI and could return to work with no restrictions. The Board acknowledged that Ms. Workman had produced evidence indicating that she was temporarily and totally disabled beyond the closure date of her benefits but concluded that the evidence failed to demonstrate that her complaints were due to her compensable conditions. Ms. Workman now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

4

On appeal, Ms. Workman argues that the Board erred in affirming the claim administrator's orders, which closed the claim for TTD benefits and denied authorization for an orthopedic consultation, an EMG of the right upper extremity, additional physical therapy, and an MR arthrogram. According to Ms. Workman, she developed pain, weakness, and a tremor in her hand following her work-related injury—symptoms that she did not have prior to the injury. Ms. Workman argues that Ms. Snyder requested an EMG and orthopedic consultations, and Dr. Abbot requested an MR arthrogram based on Ms. Workman's continued symptoms, which were appropriate diagnostic testing to determine the source of her issues and should have been authorized. Ms. Workman also argues that her request for additional physical therapy should have been authorized based on her development of symptoms following the injury. Ms. Workman contests Dr. Mukkamala's finding that she had reached MMI, noting that he indicated reduced grip strength in her injured extremity and that the chain and hook could have penetrated her infraspinatus. Moreover, Ms. Workman underwent the MR arthrogram through her private insurance, which revealed instability in her shoulder, further supporting her assertion that she had not reached MMI and was entitled to the requested diagnostic studies and treatment. Lastly, Ms. Workman argues that her claim for TTD benefits was incorrectly closed when the evidence demonstrates that she had not reached MMI, contrary to Dr. Mukkamala's findings.

We disagree and find that Ms. Workman is entitled to no relief. West Virginia Code § 23-4-3(a)(1) (2005) provides that the claim administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. Here, Ms. Workman's claim was held compensable for a contusion of the right shoulder and a laceration on her back. Dr. Mukkamala examined Ms. Workman and placed her at MMI for these compensable conditions, finding that there was no indication for additional diagnostic testing or treatment. While Ms. Workman argues that she continued to exhibit symptoms following her compensable injury, the Board found that there was no evidence indicating that these symptoms were due to either the compensable contusion or the laceration, and we agree. Ms. Workman has failed to demonstrate that the requested treatment, diagnostic testing, and referral for a consultation are medically related or reasonably required and, therefore, the Board was not clearly wrong in affirming the claim administrator's orders denying the same.

Moreover, the Board was not clearly wrong in affirming the claim administrator's order closing the claim for TTD benefits. Pursuant to West Virginia Code § 23-4-7a, entitlement to TTD benefits terminates when the claimant has reached maximum medical improvement, has been released to return to work, or has returned to work, whichever occurs first. Dr. Mukkamala found that Ms. Workman reached maximum medical improvement for her compensable conditions. Therefore, TTD benefits were properly closed.

Accordingly, we affirm the Board's December 14, 2022, order.

Affirmed.


**ISSUED:** September 5, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen


**DISSENTING:**

Judge Thomas E. Scarr

Scarr, J., dissenting:

The majority's decision affirms the Board's December 14, 2022, order, which affirmed the claim administrator's orders denying authorization for orthopedic consultations, an EMG, an MR arthrogram, and nine additional physical therapy visits and closing TTD benefits. However, these measures were clearly warranted to diagnose and treat Ms. Workman's continuing symptoms that only developed following her workplace injury, and her TTD benefits were closed prematurely. Therefore, I respectfully dissent.

First, I agree with Ms. Workman's argument that orthopedic consultations, an EMG, and an MR arthrogram should have been authorized to diagnose and resolve Ms. Workman's symptoms. The Board found, and the majority agreed, that there was no evidence that Ms. Workman's right arm weakness, pain, and tremors were caused by the compensable conditions of a laceration and a contusion; therefore, they concluded that the orthopedic consultation, EMG, and MR arthrogram were not causally related to the compensable conditions, so authorization was denied. However, there was also no evidence that a pre-existing condition or a subsequent injury were the cause of her continued symptoms. Ms. Workman developed pain, weakness, and tremors in her right arm/hand only after the workplace injury occurred. The record demonstrates that these symptoms were not present prior to the workplace injury, that they developed immediately after the workplace injury, and that they continued even after Dr. Mukkamala found she had reached MMI. Neither party presented evidence that Ms. Workman had any pre-existing conditions that would have caused her continued symptoms. Further, there is no evidence of any subsequent injury that may have caused these symptoms. Therefore, further diagnostic

6

testing was necessary to determine the cause and source of her pain, weakness, and tremors. Additionally, Ms. Workman underwent the MR arthrogram through her private insurance, which clearly found that this diagnostic procedure was medically necessary and reasonable before authorizing it. As such, orthopedic consultations, an EMG, and an MR arthrogram were all reasonable and appropriate diagnostic tools to ascertain whether her continued symptoms were attributed to the work-related injury. Thus, they should not have been denied.

Further, Ms. Workman's additional physical therapy should have been authorized for the treatment of her continued symptoms. The Board denied authorization of Ms. Workman's physical therapy treatment because it concluded that her continued symptoms were not causally related to the workplace injury. However, the evidence demonstrates that Ms. Workman's continued symptoms were likely related to her workplace injury; therefore, treatment of such symptoms through physical therapy was appropriate. As noted above, Ms. Workman developed these symptoms only after her workplace injury occurred, and no evidence was presented to show that her continued symptoms were the result of anything other than her workplace injury. There was also evidence that her previous physical therapy appointments had helped ease her symptoms. So, these symptoms were likely related to the workplace injury and continued treatment was necessary. Further, the Board seemed to deny additional physical therapy because Dr. Mukkamala had found that she reached MMI, even though she continued experiencing symptoms. Although Dr. Mukkamala found that she had reached MMI and that she needed no further treatment for her compensable conditions, his opinion is inconsistent with the evidence of record. Dr. Mukkamala found that she had reached MMI, even though he noted that her injury "might have penetrated the muscles under the skin." Moreover, Dr. Mukkamala found that Ms. Workman's grip strength in her injured, dominant hand was twenty pounds less than that of her uninjured, nondominant hand. Additionally, Ms. Workman saw other physicians after Dr. Mukkamala that noted observable tremors and objective weakness in her injured arm/hand, and the MR arthrogram revealed instability in her right shoulder. Therefore, Dr. Mukkamala's opinion that she had reached MMI varied considerably from the record demonstrating that she continued having the same symptoms that only developed after the workplace injury occurred. Thus, these symptoms were likely related to the workplace injury, and Ms. Workman's additional physical therapy should have been authorized to further treat them.

Finally, the Board erred by prematurely closing TTD benefits. Ms. Workman argues that her TTD benefits claim was incorrectly closed because the evidence demonstrates that she had not reached MMI, despite Dr. Mukkamala's findings. I agree. As discussed above, the record shows that Ms. Workman continued experiencing symptoms that related to her workplace injury even after Dr. Mukkamala found she had reached MMI. Further, Ms. Workman was not released by her other physicians to return to work for several months following Dr. Mukkamala's findings. Also, had the Board authorized her orthopedic consultations, EMG, MR arthrogram, and additional physical therapy appointments, as I

7

believe it should have, TTD benefits would and should have remained open while this continuing diagnosis and treatment occurred. Accordingly, TTD benefits should not have been closed given the status of Ms. Workman's continued symptoms, the need for continued testing to determine the source of those symptoms, and the need for continued treatment through physical therapy.

For the foregoing reasons, I dissent.